**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA and STATE OF MISSISSIPPI, by and through the MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 3:15-cv-00278-HTW-LRA** |
| **v.** | § | |
| | § | |
| **CAL-MAINE FOODS, INC.,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

# CONSENT DECREE

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. JURISDICTION AND VENUE .......... 5
III. APPLICABILITY .......... 6
IV. DEFINITIONS .......... 7
V. COMPLIANCE REQUIREMENTS .......... 14
VI. REPORTING REQUIREMENTS .......... 17
VII. CIVIL PENALTY .......... 22
VIII. STIPULATED PENALTIES .......... 23
IX. FORCE MAJEURE .......... 28
X. DISPUTE RESOLUTION .......... 30
XI. INFORMATION COLLECTION AND RETENTION .......... 32
XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .......... 34
XIII. COSTS .......... 37
XIV. NOTICES .......... 37
XV. EFFECTIVE DATE .......... 38
XVI. RETENTION OF JURISDICTION .......... 38
XVII. MODIFICATION .......... 39
XVIII. TERMINATION .......... 39
XIX. PUBLIC PARTICIPATION .......... 40
XX. SIGNATORIES/SERVICE .......... 40
XXI. INTEGRATION .......... 41
XXII. FINAL JUDGMENT .......... 41
XXIII. APPENDICES .......... 42


## Appendices


Appendix A: Facility Map

Appendix B: Land Application Standard Operating Procedures

Appendix C: Production Area Standard Operating Procedures

Appendix D: Employee Training Policy

Appendix E: Organization Chart

## I. INTRODUCTION

1. WHEREAS, Plaintiff United States of America, by the authority of the Attorney General of the United States and through its undersigned counsel, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), filed a complaint in this action concurrently with the lodging of this Consent Decree, alleging that Defendant, Cal-Maine Foods, Inc. ("Defendant"), violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, and terms and conditions of the National Pollutant Discharge Elimination System ("NPDES") permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, and seeking injunctive relief and civil penalties pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

2. WHEREAS, Plaintiff, the State of Mississippi ("State"), acting through the Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality (collectively, "MDEQ"), joined in the Complaint and seeks injunctive relief and civil penalties for Defendant's alleged violations of the Mississippi Air and Water Pollution Control Law ("MAWPCL"), Miss. Code Ann. § 49-17-1 *et seq.*

3. WHEREAS, the Parties to this Consent Decree are the United States, on behalf of the EPA; the State of Mississippi, by and through MDEQ; and Cal-Maine Foods, Inc.

4. WHEREAS, the EPA is charged with the statutory duty of enforcing the CWA pursuant to 33 U.S.C. § 1251 *et seq.* and the regulations promulgated pursuant thereto.

5. WHEREAS, MDEQ has been authorized by EPA to administer the NPDES program pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

6. WHEREAS, Defendant is a "person" within the meaning of Section 502 of the CWA, 33 U.S.C. § 1362.

7. WHEREAS, Defendant is a corporation formed in the State of Delaware, with a principal place of business located in Jackson, Mississippi. Defendant is listed on the NASDAQ Global Market under the symbol "CALM".

8. WHEREAS, Defendant owns and operates a shell-egg production facility located at 2695 Adams Lane, 32° 18' 17.73" N latitude by 90° 33' 40.36" W longitude, in Edwards, Hinds County, Mississippi. The permitted Facility covers approximately 2,677 contiguous acres, as identified in Appendix A, and contains multiple poultry confinement structures, lagoons and cropland.

9. WHEREAS, Cal-Maine Farms, Inc. ("Cal-Maine Farms", and collectively with Defendant, "Defendant") previously operated portions of the above Defendant's Hinds County Facility. Cal-Maine Farms was merged with and into Defendant effective January 1, 2015.

10. WHEREAS, the Hinds County Facility at issue qualifies, or qualified at a time relevant to this action, as a "large concentrated animal feeding operation" as that term is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), and 40 C.F.R. § 122.23(b)(2). As listed in Cal-Maine Farms' 2013 NPDES CAFO Permit Annual Report for Permit No. MS220049, this Facility, as of March 21, 2014, has 48 houses containing approximately 1,611,190 laying hens and 999,000 pullets and breeders (roosters and hens). *See* 40 C.F.R. 122.23(b)(4)(ix) and (xi). The Facility uses both a liquid Manure handling system and a dry Manure handling system.

11. WHEREAS, the Complaint alleges that Defendant violated Section 301 of the CWA, and the terms and conditions of NPDES Permit No. MS0058467, which was issued on September 11, 2006 under Section 402 of the CWA, 33 U.S.C. § 1342, to Cal-Maine Farms by MDEQ for the Hinds County Facility (hereafter the "2006 NPDES Permit"). The 2006 NPDES Permit had an expiration date of August 31, 2011.

12. WHEREAS, on February 24, 2011, more than 180 days prior to the expiration of the 2006 NPDES Permit, Defendant submitted a Notice of Intent for Coverage under the Multimedia General Permit Including NPDES Requirements for Concentrated Animal Feeding Operations General Permit Number MSG220049, and coverage was extended under the 2006 NPDES Permit through January 9, 2012.

13. WHEREAS, on August 23, 2010, MDEQ issued a Multimedia General Pollution Control Permit to Manage Manure/Litter and/or to Construct/Operate Air Emissions Equipment and/or Discharge Storm Water in Accordance with the National Pollutant Discharge Elimination System and Mississippi's Ambient Air Quality Standards, Permit No. MSG22, in accordance with the provisions of the Mississippi Air and Water Pollution Control Law (Section 49-17-1 et seq., Mississippi Code of 1972), and the regulations and standards adopted and promulgated thereunder, and under authority granted pursuant to Section 402(b) of the CWA (hereafter the "General Permit"). The General Permit expires on July 31, 2015.

14. WHEREAS, on January 9, 2012, MDEQ granted Defendant a Certificate of Permit Coverage under the General Permit, Coverage No: MSG220049. Coverage under the General Permit expires on July 31, 2015.

15. WHEREAS, the Complaint alleges that Defendant's Hinds County Facility has violated the CWA and the 2006 NPDES Permit at various times between on or about July 12, 2010 and on or about September 14, 2010, by discharging pollutants into waters of the United States without NPDES permit authorization.

16. WHEREAS, the Complaint also alleges that Defendant violated the CWA and the applicable NPDES permit at various times between on or about January 28, 2008 and on or about August 12, 2011, by failing to comply with requirements contained in its 2006 NPDES Permit,

including failure to conduct quarterly stormwater sampling; failure to Timely submit annual Daily Monitoring Reports to MDEQ; failure to comply with Best Management Practices buffer Setback requirements; application of Manure, Litter, and/or Process Wastewater to Land Application Areas during prohibited periods; failure to maintain land application records; and application of nitrogen to three Land Application Areas in exceedance of the Application Rates established by the Nutrient Management Plan.

17. WHEREAS, since being notified of the violations listed in Paragraphs 15 and 16, above, Defendant has represented to the EPA and MDEQ that it has implemented the following measures to bring the Hinds County Facility into compliance with the current NPDES permit, including: (i) creating Standard Operating Procedures ("SOPs") for land application of Manure, Litter, and/or Process Wastewater; (ii) creating SOPs for Production Areas; (iii) creating an employee training policy concerning the CWA and permit training requirements; (iv) submitting to MDEQ the 2014 NMP; (v) creating an improved record keeping system to document land application; and (vi) installing equipment on evaporative cooling systems and implementing procedures to eliminate unauthorized discharges from the cooling systems in Production Areas.

18. WHEREAS, Defendant neither admits nor denies any of the factual or legal allegations in the Complaint, and further Defendant's agreement to this Consent Decree is not an admission of liability, nor is it an adjudication or admission of any fact or law, except for its consent to jurisdiction and venue as provided in Section II (Jurisdiction and Venue) of this Consent Decree.

19. WHEREAS, the Parties stipulate that settlement of Plaintiffs' claims in accordance with the terms of this Consent Decree is in the public interest and have agreed to entry of this

Consent Decree without trial of any issues, and the Parties hereby stipulate that, in order to resolve the claims stated in the Plaintiffs' complaint, this Consent Decree should be entered.

20. WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

21. NOW THEREFORE, in consideration of the recitals and violations described above, and in the interest of settling all civil claims and controversies alleged in the Complaint before taking any testimony and without adjudication of any fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## II. JURISDICTION AND VENUE

22. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties. This Court has supplemental jurisdiction over the state law claims asserted by the State pursuant to 28 U.S.C. § 1367. Venue is proper in the Southern District of Mississippi pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in this judicial district.

23. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over Defendant, this Consent Decree and any such action related to this Consent Decree, and also consents to venue in this judicial district.

24. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309 of the CWA, 33 U.S.C. § 1319(b), and Miss. Code Ann. §§ 49-17-29 and 49-17-43.

## III. APPLICABILITY

25. The obligations of this Consent Decree apply to and are binding upon the United States, the State of Mississippi, and upon Defendant and any of Defendant's successors, assigns, or other entities or persons otherwise bound by law.

26. Unless EPA otherwise agrees in writing, no transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Consent Decree are implemented, unless: (a) the Plaintiffs consent to relieve Defendant of its obligations, and (b) the transferee agrees to undertake the obligations required by this Decree, as they apply to the Facility being transferred, and to be added as a Party under the Decree and thus be bound by the terms thereof. At least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States and the State in accordance with Section XIV of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

27. Within thirty (30) Days after the Effective Date of this Consent Decree, the Defendant shall provide a copy of this Consent Decree to all officers, employees, and managers whose duties might reasonably include compliance with any substantive provision of this Consent Decree, as well as to a principle responsible officer or senior management official of any contractor retained to perform substantive work required under Appendices B, C and D of this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

28. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV. DEFINITIONS

29. Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA (including, without limitation, those terms defined in Section 502 of the CWA, 33 U.S.C. § 1362, and at 40 C.F.R. § 122.2) shall have the meanings assigned to them in the CWA, 33 U.S.C. §§ 1251 *et seq.*, or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. The "2006 NPDES Permit" shall mean for the purposes of this Consent Decree the NPDES permit (Permit No. MS0058467) issued by MDEQ to Cal-Maine Farms on September 11, 2006, and any subsequent extensions.

b. The "2014 NMP" shall mean for the purposes of this Consent Decree the NMP which Defendant submitted to MDEQ on March 21, 2014, with subsequent revisions thereto on April 1, 2014, and which MDEQ approved (including the subsequent revisions) on April 2, 2014, and subsequently revised and approved on August 26, 2014, and any subsequent revisions approved by the EPA and MDEQ per Paragraph 31 of this Consent Decree.

c. "Application Rates" shall mean the land application at the Facility of Manure, Litter, or Process Wastewater at rates of application in accordance with an approved Nutrient Management Plan.

d. "Best Management Practices" or "BMPs" shall mean the schedules of activities, prohibitions of practices, maintenance procedures, and other

management practices to prevent or reduce the discharge of pollutants to waters of the United States. BMPs shall also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

e. "Certification" or "certify" when used in this Consent Decree shall require the Defendant to comply with Paragraph 41 of this Consent Decree.

f. "Complaint" shall mean the complaint filed by the United States and the State in this action.

g. "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto listed in Section XXIII (Appendices). In the event of a conflict between this Decree and any appendix, this Decree shall control.

h. "Control Measure" shall mean, for purposes of this Decree, any Best Management Practice or other method used to prevent or reduce the discharge of pollutants to waters of the United States.

i. "CWA" shall mean the Clean Water Act, as amended, 33 U.S.C. §§ 1251, *et seq*.

j. "Date of Entry" shall mean the date on which this Consent Decree is entered by the United States District Court for the Southern District of Mississippi or the date on which the Court grants a motion to enter the Consent Decree, whichever occurs first, as recorded on the Court's docket.

k. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the

last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

l. "Defendant" shall mean Cal-Maine Foods, Inc., and any successor(s) thereto.

m. "Deliverable" shall mean any written document required to be prepared and/or submitted by or on behalf of Defendant for purposes of this Consent Decree.

n. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

o. "Effective Date" shall have the definition provided in Section XV.

p. "Facility" shall mean the large poultry concentrated animal feeding operation ("CAFO") owned by Defendant located on 2,677 contiguous acres, as identified in Appendix A, located at 2695 Adams Lane, 32° 18' 17.73" North latitude by 90° 33' 40.36" West longitude, in Edwards, Hinds County, Mississippi, and consisting, as of March 21, 2014, of 48 houses which contain approximately 1,611,190 laying hens, 999,000 pullets and breeders (roosters and hens), two anaerobic wastewater lagoons, several storage lagoons, several Manure pits, and cropland.

q. The "General Permit" shall mean for the purposes of this Consent Decree the Multimedia General Pollution Control Permit to Manage Manure/Litter and/or Construct/Operate Air Emissions Equipment and/or Discharge Storm Water in Accordance with the National Pollutant Discharge Elimination System and Mississippi's Ambient Air Quality Standards

issued by MDEQ on August 23, 2010 (Permit No. MSG22), and any future extended, modified or reissued permit.

r. “Land Application Area” or “Land Management Unit” (“LMU”) shall mean land under the control of Defendant, whether it is owned, rented, or leased, to which Manure, Litter or Process Wastewater from the Production Area of the Facility is or may be applied in accordance with and as described in the NMP.

s. “Large CAFO” shall mean for the purposes of this Consent Decree a concentrated animal feeding operation that stables or confines as many as or more than the numbers of birds specified in any of the following categories:

   i. 30,000 laying hens or broilers, if the animal feeding operation (“AFO”) uses a liquid Manure handling system;

   ii. 125,000 chickens (other than laying hens), if the AFO uses other than a liquid Manure handling system; or

   iii. 82,000 laying hens, if the AFO uses other than a liquid Manure handling system;

t. “Litter” is defined to include chicken litter, bedding, compost, and raw materials or other materials commingled with litter or set aside for disposal.

u. “Manure” is defined to include manure, bedding, compost and raw materials or other materials commingled with manure or set aside for disposal.

v. “MAWPCL” shall mean the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. §§ 49-17-1 *et seq.*

w. "MDEQ" shall mean the Mississippi Department of Environmental Quality and the Mississippi Commission on Environmental Quality, collectively, and any of their successor departments or agencies of the State.

x. "NPDES" shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the CWA, 33 U.S.C. § 1342.

y. "Nutrient Management Plan" or "NMP " shall mean a written plan developed for a specific facility that includes the information, protocols, Best Management Practices, and other conditions necessary to (i) ensure adequate storage of Manure, Litter, and Process Wastewater, including procedures to ensure proper operation and maintenance of the storage facilities; (ii) ensure proper management of mortalities (i.e., dead animals) to ensure that they are not disposed of in a liquid Manure, storm water, or Process Wastewater storage or treatment system that is not specifically designed to treat animal mortalities; (iii) ensure that clean water is diverted, as appropriate, from the Production Area; (iv) prevent direct contact of confined animals with waters of the United States; (v) ensure that chemicals and other contaminants handled on-site are not disposed of in any Manure, Litter, Process Wastewater, or storm water storage or treatment system unless specifically designed to treat such chemicals and other contaminants; (vi) identify appropriate site specific conservation practices to be implemented, including as appropriate buffers or equivalent practices, to control runoff of pollutants to waters of the United States; (vii) identify protocols for appropriate testing of Manure, Litter, Process Wastewater,

and soil; (viii) establish protocols for land application of Manure, Litter or Process Wastewater in accordance with site specific nutrient management practices that ensure appropriate agricultural utilization of the nutrients in the Manure, Litter or Process Wastewater; and (ix) identify specific records that will be maintained to document the implementation and management of the aforementioned requirements.

z. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or letter.

aa. "Parties" shall mean the United States of America on behalf of EPA, the State of Mississippi by and through MDEQ and Defendant.

bb. "Plaintiffs" shall mean the United States of America on behalf of EPA and the State of Mississippi by and through MDEQ.

cc. "Process Wastewater" shall mean the water directly or indirectly used in the operation of the AFO for any or all of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, Manure pits, or other AFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including Manure, Litter, feed, milk, eggs or bedding.

dd. "Production Area" shall mean for purposes of this Decree the part of the Facility that includes the animal confinement area, the Manure storage area, the raw materials storage area and the waste containment areas. The animal

confinement area includes but is not limited to open lots, housed lots, feedlots, confinement houses, barnyards, medication pens, walkers, animal walkways, and stables. The Manure storage area includes but is not limited to lagoons, runoff ponds, storage sheds, stockpiles, under house or pit storages, liquid impoundments, static piles, and composting piles. The raw materials storage area includes but is not limited to feed silos, silage bunkers, and bedding materials. The waste containment area includes but is not limited to settling basins, and areas within berms and diversions which separate uncontaminated storm water. Also included in the definition of Production Area is any egg washing or egg processing facility, and any area used in the storage, handling, treatment, or disposal of mortalities.

ee. “Section” shall mean a portion of this Consent Decree identified by a Roman numeral.

ff. “Setback” shall mean a specified distance from surface waters or potential conduits to surface waters where Manure, Litter and Process Wastewater may not be land applied. Examples of conduits to surface waters include but are not limited to: Open tile line intake structures, sinkholes, and agricultural well heads. The initial setbacks agreed upon by the Parties, in effect as of the Effective Date, are identified in the 2014 NMP.

gg. “State” shall mean the State of Mississippi including all of its departments, agencies and instrumentalities.

hh. “Timely” when applied to the submittal of a Deliverable shall mean submitted no later than the deadline established in this Consent Decree (or

in a document approved pursuant to this Consent Decree) and containing all of the elements pertaining to the submittal as set forth in this Consent Decree (or in a document approved pursuant to this Consent Decree).

ii. “United States” shall mean the United States of America, acting on behalf of EPA, including its departments, agencies and instrumentalities.

jj. “Vegetated Buffer” shall mean a narrow, permanent strip of dense perennial vegetation established parallel to the contours of and perpendicular to the dominant slope of the field for the purposes of slowing water runoff, enhancing water infiltration, and minimizing the risk of any potential nutrients or pollutants from leaving the field and reaching surface waters. The initial buffers agreed upon by the Parties, in effect as of the Effective Date, are identified in the 2014 NMP.

## V. COMPLIANCE REQUIREMENTS

30. Where any compliance obligation under this Section requires Defendant to obtain a federal, State or local permit or approval, Defendant shall submit Timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section IX (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation if Defendant has submitted Timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

31. For the duration of this Consent Decree, all changes that Defendant requests be made to the applicable NMP shall be sent to both the EPA and MDEQ for review and approval. EPA shall complete its review and comment on such changes within a reasonable time.

32. Defendant shall continue to implement the following:

a. Defendant has submitted to EPA and MDEQ, and EPA and MDEQ have approved, the Land Application Standard Operating Procedures attached hereto as Appendix B, and Defendant has represented to the EPA and MDEQ that it has implemented the requirements set forth therein. Beginning on the Effective Date of this Consent Decree, Defendant shall continue to implement and comply with the Land Application Standard Operating Procedures specified in Appendix B, which include, but are not limited to: (i) maintaining a 35 foot wide Vegetated Buffer, where application of Manure, Litter, or Process Wastewater are prohibited, to any down-gradient surface waters, open tile line intake structures, sinkholes, agricultural well heads, or other conduits to surface waters in compliance with General Permit ACT 4, Condition L-3(1); (ii) applying all nutrients, including Manure, Litter, Process Wastewater, and commercial fertilizer at the Facility in accordance with the Application Rates for nutrients contained in the 2014 NMP and BMPs in compliance with General Permit ACT 4, Condition L-7, and ACT 7, Conditions T-2, T-3, and T-4; (iii) monitoring of land application equipment at least once every 120 minutes during application in each Land Management Unit to ensure proper operation and adherence of buffer areas until the termination of this Consent Decree pursuant to Section XVIII (Termination) regardless of the requirements of the General Permit or any changes thereto; and (iv) creating

and maintaining land application records at the Facility in compliance with General Permit ACT 5, Condition R-2.

b. Defendant has submitted to EPA and MDEQ, and EPA, and MDEQ have approved, the Production Area Standard Operating Procedures attached hereto as Appendix C, and Defendant has represented to the EPA and MDEQ that it has implemented the requirements set forth therein. Beginning on the Effective Date of this Consent Decree, Defendant shall continue to implement and comply with the Production Area Standard Operating Procedures specified in Appendix C, which include, but are not limited to: (i) inspecting each Production Area in compliance with General Permit ACT 5, Condition R-3; (ii) documenting the results of such inspections in compliance with General Permit ACT 5, Condition R-1; (iii) taking any corrective measures in compliance with General Permit ACT 5, Condition R-3(4), including actions necessary to eliminate discharges of pollutants from each Production Area to waters of the State and/or the United States, in violation of General Permit ACT 4, Condition L-6; (iv) creating and maintaining Production Area inspection and corrective actions taken in compliance with General Permit ACT 5, Conditions R-1 and R-3; and (v) reporting to MDEQ and EPA any discharges of pollutants from the Facility's Production Areas to waters of the State and/or United States, in compliance with General Permit ACT 8, Condition S-4.

c. Defendant has submitted to EPA and MDEQ, and EPA and MDEQ have approved, the Employee Training Policy attached hereto as Appendix D,

and Defendant has represented to the EPA and MDEQ that it has implemented the requirements set forth therein. Beginning on the Effective Date of this Consent Decree, Defendant shall continue to implement and comply with the Employee Training Policy specified in Appendix D.

33. With respect to the Facility, no later than July 1, 2015, Defendant shall comply with General Permit ACT 2, Condition S-2, with respect to renewal of coverage under the General Permit, with notice provided to EPA, as provided by Section XIV (Notices).

## VI. <u>REPORTING REQUIREMENTS</u>

34. Defendant shall submit to both EPA and MDEQ the following:

a. All land application records required by General Permit ACT 5, Condition R-2, including, but not limited to, the Daily Land Application Inspection and Corrective Actions Forms, which document daily pumping events and are required to be prepared prior, during and after land application events, as specified in Section 5 of the Land Application Standard Operating Procedures (see Appendix B), and any other applicable records.

b. All records for Production Areas required by General Permit ACT 5, Condition R-1, including, but not limited to the Weekly Production Area Inspection Information Form, and Production Area Daily Water Line Inspection Log Sheet, and the Corrective Actions Taken Form, as required by to Sections 2, 3 and 5, and Exhibits A – C of the Production Area Standard Operating Procedures, as specified in Appendix C.

c. The Employee Training Documentation information required by the Employee Training Policy, as specified in Appendix D.

35. All records required to be submitted pursuant to Paragraphs 34(a)-(c) shall be submitted on or before the due date as specified in the table below:

| **Record Creation/Maintenance Dates** | **Due Date for Record Submittal** |
|---|---|
| April. 1, 2014 to December 31, 2014 | 30 days from Date of Entry of the Consent Decree, but no later than April 30, 2016 |
| January 1, 2015 to March 31, 2015 | 120 days from Date of Entry of the Consent Decree, but no later than April 30, 2016 |
| April 1, 2015 to June 30, 2015 | 210 days from Date of Entry of the Consent Decree, but no later than April 30, 2016 |
| July 1, 2015 to September 30, 2015 | 300 days from Date of Entry of the Consent Decree, but no later than April 30, 2016 |
| October 1, 2015 to December 31, 2015 | 390 days from Date of Entry of the Consent Decree, but no later than April 30, 2016 |
| January 1, 2016 to March. 31, 2016 | April 30, 2016 |

36. Annual Reports: General Permit ACT 6, Condition S-1 requires Defendant to submit to MDEQ on or before January 28th of each calendar year while the General Permit is in effect an Annual Report which includes (1) the number and type of animals at the Facility; (2) estimated amount of total Manure, Litter and Process Wastewater generated in the previous 12 months; (3) estimated amount of total Manure, Litter and Process Wastewater transferred to other persons in the previous 12 months; (4) total number of acres for land application covered by the NMP; (5) total number of acres at the Facility that were used for land application of Manure, Litter and Process Wastewater during the previous 12 months; (6) summary of all Manure, Litter and Process Wastewater discharges from the Production Area which occurred in the previous 12 months; (7) a statement indicating whether the current NMP was developed or approved by a certified nutrient management planner; and (8)(i) the actual crops planted and actual yields for

each field, (ii) the actual nitrogen and phosphorous content of the Manure, Litter and Process Wastewater, (iii) the results of calculations of nitrogen and phosphorous tests pursuant to 40 C.F.R. § 122.42(e)(5)(i)(B) and (ii)(D), (iv) the amount of Manure, Litter and Process Wastewater applied to each field during the previous 12 months, and (v) if Defendant's NMP addresses rates of application in accordance with 40 C.F.R. § 122.42(e)(5)(ii), the results of any soil testing for nitrogen and phosphorous done in the previous 12 months, the data used in the calculations done pursuant to 40 C.F.R. § 122.42(e)(5)(ii)(D), and the amount of any supplemental fertilizer applied during the previous 12 months. Defendant shall submit an Annual Report, in such form as approved by MDEQ, to both EPA and MDEQ for review and comment on or before January 28th of each calendar year until termination of this Consent Decree pursuant to Section XVIII (Termination).

37. Permit Noncompliance Reporting: General Permit ACT 8, Condition S-4 requires Defendant to submit to MDEQ (1) advanced notice of any planned changes in the permitted facility or activity which may result in noncompliance with permit requirements; (2) an oral report of any unanticipated noncompliance within 24 hours from the time Defendant becomes aware of the circumstances, and a written report within 5 days from the time Defendant becomes aware of the circumstances and containing a description of the noncompliance and its cause; the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and/or prevent recurrence of the noncompliance; and (3) all instances of noncompliance with the General Permit not otherwise reported pursuant to subparagraph (2), due either on January 28th of each calendar year or within 30 days from the end of the month in which the noncompliance occurs, and containing a description of the noncompliance and its cause; the period of

noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and/or prevent recurrence of the noncompliance. Defendant shall submit this information to both EPA and MDEQ on the dates specified in the General Permit ACT 8, Condition S-4 and in this Paragraph until termination of this Consent Decree pursuant to Section XVIII (Termination).

38. Consent Decree Noncompliance Reporting: Defendant shall submit to EPA and MDEQ a description of any non-compliance with the requirements of this Consent Decree, to the extent that such non-compliance has not already been reported pursuant to the preceding Paragraphs, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation as follows: Defendant shall notify the United States and the State of such violation and its likely duration, in writing, within ten (10) Days from the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days from the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX (Force Majeure).

39. Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of the Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State orally or by electronic or facsimile transmission as soon

as possible, but no later than twenty-four (24) hours after Defendant first knew of the violation or event, in compliance with General Permit ACT 8, Condition S-4. This procedure is in addition to the requirements set forth in the preceding Paragraph.

40. All submissions required under this Consent Decree shall be submitted by the Defendant electronically in a digital format that is searchable, where available, provided that the total size of attachments to each email not exceed 10 MB. All submissions made by Defendant under this Section shall be submitted to the persons specified in Section XIV (Notices).

41. Certification: Each submission made by Defendant under this Section shall be signed by an official of the submitting party and shall include the following certification:

> *I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

However, this certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

42. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CWA or implementing regulations, or by any other federal, State, or local law, regulation, permit, or other requirement.

43. Any information provided pursuant to this Consent Decree may be used by the United States and the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. CIVIL PENALTY

44. Defendant shall pay the sum of $475,000 as a civil penalty within thirty Days after the Date of Entry of this Consent Decree.

45. Defendant shall pay to the United States the sum of $237,500 by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Southern District of Mississippi, 501 East Court Street, Suite 4.430, Jackson, Mississippi 39201, (601) 965-4480. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States et al. v. Cal-Maine Foods, Inc., and shall reference the civil action number and DOJ case number 90-5-1-1-10734, to the United States in accordance with Section XIV (Notices); by email to acctsreceivable.cinwd@epa.gov; and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio 45268

In the event that full cash payment to the United States is not made within the due date, Defendant shall also pay to the United States interest on the balance due from the original due date to the date of payment, at the rate calculated pursuant to 28 U.S.C. § 1961.

46. Defendant shall pay to the State the sum of $237,500 due by check payable to the "Mississippi Department of Environmental Quality." The check shall reference the case name and civil action number herein and shall be sent to:

Mississippi Department of Environmental Quality
Attn: Jennifer Parish
P.O. Box 2339
Jackson, Mississippi 39225

47. Defendant shall not deduct the civil penalty paid under this Consent Decree in calculating its federal income tax.

## VIII. STIPULATED PENALTIES

48. Defendant shall be liable for stipulated penalties to the United States and MDEQ for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

| **Consent Decree Violation** | **Stipulated Penalty (per day per violation, unless otherwise noted)** |
|---|---|
| a. Failure to pay the civil penalties as specified in Section VII (Civil Penalty) | $10,000 |
| b. Failure to provide a copy of this Consent Decree to any proposed transferee or to provide written notice to the Plaintiffs of the prospective transfer, as required by Paragraph 26. | $5,000 per occurrence |
| c. Failure to comply with General Permit ACT 2, Condition S-2 and Paragraph 33 of this Consent Decree, with respect to timely renewal of coverage under the General Permit. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| d. Failure to adhere to the Application Rates for nutrients specified in the current approved NMP and BMPs, as required by Paragraph 2 of the Land Application Standard Operating Procedures, attached hereto as Appendix B, and General Permit ACT 4, Condition L-7 and ACT 7, Conditions T-2, T-3 and T-4, at an exceedance of more than 2.5% of the specified Application Rate. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |

| Consent Decree Violation | Stipulated Penalty (per day per violation, unless otherwise noted) |
|---|---|
| e. Failure to implement or comply with any requirement to conduct wastewater application monitoring and land application equipment monitoring, as required by Paragraph 3 of the Land Application Standard Operating Procedures, attached hereto as Appendix B, and the General Permit ACT 5, Condition R-7 and ACT 4, Condition L-3. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| f. Land application of wastewater during prohibited periods, in contravention of the 2014 NMP, and General Permit ACT 4, Condition L-7 and ACT 7, Conditions T-4(2)-(3). | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| g. Land application of wastewater to prohibited areas, in contravention of Paragraphs 2 and 3 of the Land Application Standard Operating Procedures, attached hereto as Appendix B. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| h. Failure to maintain Land Application Area buffer zones, as required by Paragraphs 2 and 3 of the Land Application Standard Operating Procedures, attached hereto as Appendix B, and General Permit ACT 4, Conditions L-2 and L-3. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| i. Failure to conduct Production Area inspections, as required by Paragraph 2 of the Production Area Standard Operating Procedures, attached hereto as Appendix C, and General Permit ACT 5, Condition R-3. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| j. Failure to take any corrective measures necessary pursuant to Paragraph 3 of the Production Area Standard Operating Procedures, attached hereto as Appendix C, and General Permit ACT 5, Condition R-3 | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |

| **Consent Decree Violation** | **Stipulated Penalty (per day per violation, unless otherwise noted)** |
|---|---|
| k. Failure to document, or retain documents of, Production Area inspections, as required by Paragraph 5 of the Production Area Standard Operating Procedures, attached hereto as Appendix C, and General Permit ACT 5, Conditions R-1 and R-3. | $250 per day per violation for the first 21 days; $500 per day per violation for the next 21 days; $1,000 per day per violation thereafter |
| l. Failure to report to EPA and MDEQ any discharges of pollutants from the Facility's Production Areas to waters of the State and/or United States, as required by Paragraph 3 of the Production Area Standard Operating Procedures, attached hereto as Appendix C, and General Permit ACT 8, Condition S-4. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| m. Failure to conduct employee training, as required by the Employee Training Policy, attached hereto as Appendix D. | $500 per day per violation for the first 21 days; $1,000 per day per violation for the next 21 days; $2,000 per day per violation thereafter |
| n. Failure to submit land application records, inspection reports, Production Area records, Annual Reports, or any other report or submittal required by Paragraph 5 of the Land Application Standard Operating Procedures, attached hereto as Appendix B; Paragraph 5 of the Production Area Standard Operating Procedures, attached hereto as Appendix C; the Employee Training Policy, attached hereto as Appendix D; the General Permit; or this Consent Decree, as required under this Consent Decree. | $250 per day per violation for the first 21 days; $500 per day per violation for the next 21 days; $1,000 per day per violation thereafter |
| o. Failure to permit entry to EPA, MDEQ, or their authorized representatives to the Facility, as required by Section XI (Information Collection and Retention) of this Consent Decree. | $500 per day per violation |
| p. Any other violation of reporting requirements of this Consent Decree. | $250 per day per violation for the first 21 days; $500 per day per violation for the next 21 days; $1,000 per day per violation thereafter |

49. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

50. Defendant shall pay stipulated penalties to the United States and MDEQ within thirty (30) Days of receiving the United States' and/or MDEQ's written demand. Defendant shall pay fifty (50) percent of the total stipulated penalty amount due to the United States and fifty (50) percent to MDEQ.

51. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

52. MDEQ may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to MDEQ under this Consent Decree.

53. Stipulated penalties shall continue to accrue as provided in Paragraph 49, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA, after consultation with MDEQ, and is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b. If the dispute is appealed to the Court and the United States and/or MDEQ prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty

(60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

54. Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 45, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendant shall pay stipulated penalties owing to MDEQ in the manner set forth in Paragraph 46.

55. Defendant shall not deduct the stipulated penalties paid under this Consent Decree in calculating its federal income tax.

56. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or MDEQ from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

57. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States and MDEQ for Defendant's violation of this Consent Decree or applicable law. Defendant reserves all rights to contest any such additional actions taken by the United States and/or MDEQ against the Defendant.

Where a violation of this Consent Decree is also a violation of the CWA, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX. FORCE MAJEURE

58. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree. Adverse weather conditions may, in some cases, constitute a Force Majeure event.

59. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA and MDEQ as soon as possible but not later than seventy-two (72) hours of when Defendant first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendant shall provide in writing to EPA and MDEQ an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may

cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

60. If EPA, after a reasonable opportunity for review and comment by MDEQ, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by MDEQ, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

61. If EPA, after a reasonable opportunity for review and comment by MDEQ, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision. The EPA's decision shall be binding unless the Defendant timely invokes the dispute resolution procedures set forth in Section X (Dispute Resolution) of this Consent Decree.

62. If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of

the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 58 and 59. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

63. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States and/or the State to enforce any obligation of Defendant arising under this Decree.

64. Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States and the State a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period is modified by written agreement between the United States, in consultation with the State and the Defendant. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

65. Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

66. The United States, after consultation with the State, shall serve its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

67. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

68. The United States, after consultation with the State, shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

69. Standard of Review. Except as otherwise provided in this Consent Decree, in any dispute brought before this Court that was invoked under Paragraph 67, Defendant shall bear the burden of proof, and each Party reserves the right to argue what the appropriate standard of proof and standard of review should be under applicable principles of law.

70. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 53. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

71. The United States, MDEQ, and their representatives, including attorneys and authorized contractors, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States or MDEQ in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs and similar data; and

e. assess Defendant's compliance with this Consent Decree.

Any persons conducting inspections of the Facility shall comply with the bio-security procedures then in effect at the Facility and which are generally applicable to personnel accessing the Facility,

and shall further follow the relevant provisions of EPA's *Routine Biosecurity Procedures for EPA Personnel Visiting Farms, Ranches, Slaughterhouses and other Facilities with Livestock and Poultry*, issued December 10, 2001, and any revisions or updates thereto.

72. Upon request, Defendant shall provide EPA and MDEQ or their authorized representatives splits of any samples taken by Defendant at the Facility. Upon request, EPA and MDEQ shall provide Defendant or its authorized representatives splits of any samples taken by EPA or MDEQ at the Facility.

73. Until three (3) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to retain, copies of all documents, records or other information (including documents, records or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that are necessary to demonstrate Defendant's performance of its obligations to perform substantive work under Appendices B, C and D of this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or MDEQ, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph. Defendant may comply with its document retention obligations in this Consent Decree by maintaining its records solely in electronic format.

74. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and MDEQ at least sixty (60) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or MDEQ, Defendant shall deliver

any such documents, records, or other information to EPA or MDEQ. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

75. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

76. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or MDEQ pursuant to applicable federal or State laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

77. In consideration of the actions that will be performed and the payments that will be made by Defendant under the terms of this Consent Decree, and except as specifically provided below, the United States covenants not to sue or take administrative action against Defendant concerning:

a. the violations the United States specifically alleged in the Complaint filed in this action, through March 31, 2014;

b. the civil claims of the United States under Sections 301, 309 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311, 1319 and 1342, for the alleged unauthorized discharge of pollutants in violation of the Clean Water Act at, from, or otherwise relating to the Facility through March 31, 2014; and

c. the civil claims of the United States for any violations of the General Permit, the 2006 NPDES Permit, and/or the NMP at, from, or otherwise relating to the Facility through March 31, 2014.

78. In consideration of the actions that will be performed and the payments that will be made by Defendant under the terms of this Consent Decree, and except as specifically provided below, the State covenants not to sue or take administrative action against Defendant concerning:

a. the violations the State specifically alleged in this Decree and the Complaint filed in this action, through March 31, 2014;

b. the civil claims of the State under MAWPCL for the alleged unauthorized discharge of pollutants into the waters of the State at, from, or otherwise relating to the Facility through March 31, 2014; and

c. the civil claims of the State for any violations of the General Permit, the 2006 NPDES Permit, and/or the NMP at, from, or otherwise relating to the Facility through March 31, 2014.

79. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraphs 77 and 78. This Consent Decree shall not be construed to limit the rights of the United States or the State to

obtain penalties or injunctive relief under the CWA, the MAWPCL, their implementing regulations, or under other federal or State laws, regulations, or permit conditions, except as expressly specified in Paragraphs 77 and 78. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

80. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 77 and 78.

81. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, the MAWPCL, or with any other provisions of federal, State, or local laws, regulations, or permits.

82. This Consent Decree does not limit or affect the rights of the Parties to this Consent Decree against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

83. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII. COSTS

84. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV. NOTICES

85. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by Email (10 MB size limit):
eescasemanagement.enrd@usdoj.gov
Re: DJ # 90-5-1-1-10734

and

joe.don@epa.gov
Re: Cal-Maine CAFO, Hinds County, MS

As to the State/MDEQ (10 MB size limit):
Chris_Sanders@deq.state.ms.us
Re: Cal-Maine CAFO, Hinds County, MS

As to Defendant:
Rob Holladay (rholladay@cmfoods.com)
General Counsel
Cal-Maine Foods, Inc.
3320 West Woodrow Wilson Avenue
Jackson, MS 39209
Fax: (601) 510-8658
Re: Cal-Maine Consent Decree for Edwards Facility, Hinds County, MS

and

Leonard H. Dougal (ldougal@jw.com)
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, TX 78701
Fax: 512.391.2112
Re: Cal-Maine Consent Decree for Edwards Facility, Hinds County, MS

86. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

87. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

88. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI. RETENTION OF JURISDICTION

89. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section X (Dispute Resolution) and Section XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII. MODIFICATION

90. The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Non-material changes to this Consent Decree (including appendices) may be made by written agreement of the Parties without Court approval. For purposes of this Section, non-material changes shall include: a) changes or modifications of an NMP which have been approved pursuant to the terms of the General Permit, and b) changes or modifications to the Land Application Standard Operating Procedures, Production Area Standard Operating Procedures or Employee Training Policy, along with the forms associated with such procedures and policies, that will not relax a standard or BMP which will result in a deterioration of quality of water in the State, or to correct typographical errors.

91. Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 69, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

92. No sooner than July 31, 2016, this Consent Decree may be terminated when the United States, after consultation with MDEQ, determines that the following events have occurred: the Defendant has submitted all records described in Paragraphs 34(a)-(c) created and maintained through March 31, 2016, and the Defendant has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree that were not waived or reduced by the United States. Defendant may serve upon the United States and MDEQ a Request for Termination, certifying that Defendant has satisfied these requirements, together with all necessary supporting documentation.

93. Following receipt by the United States and MDEQ of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with MDEQ, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

94. If the United States, after consultation with MDEQ, does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until sixty (60) Days after service of its Request for Termination.

## XIX. PUBLIC PARTICIPATION

95. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. The State and Defendant consent to entry of this Consent Decree, in its current form, without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified the Parties in writing that it no longer supports entry of the Consent Decree. Plaintiffs shall serve on Defendant any documents or pleadings filed with the Court in this docket.

## XX. SIGNATORIES/SERVICE

96. Each undersigned representative of Defendant, the State, EPA and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of

Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

97. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by email and/or mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION

98. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the Appendices, which are attached to and incorporated in this Consent Decree, and Deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII. FINAL JUDGMENT

99. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Cal-Maine Foods. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDICES

100. The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Facility Map;

"Appendix B" is the Land Application Standard Operating Procedures;

"Appendix C" is the Production Area Standard Operating Procedures; and

"Appendix D" is the Employee Training Policy; and

"Appendix E" is the Organization Chart.

Dated and entered this ________ day of __________________________________, 2015.

______________________________________________

UNITED STATES DISTRICT JUDGE

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Date

RACHAEL AMY KAMONS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-5260
Facsimile: (202) 616-2427
E-mail: Rachael.Kamons@usdoj.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.,* subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

4-10-15
Date

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

4-10-15
Date

MITZI DEASE PAIGE
Assistant United States Attorney
MS Bar No. 6014
United States Attorney's Office
Southern District of Mississippi
501 E. Court Street, Ste. 4.430
Jackson, Mississippi 39201
Telephone: (601) 973-2840
Facsimile: (601) 965-4409
Email: Mitzi.Paige@usdoj.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

4/7/15
Date

MARY J. WILKES
Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

Of Counsel:
TANYA FLOYD
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
Telephone: (404) 562-9813
E-mail: floyd.tanya@epa.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

3/10/15
Date

SUSAN SHINKMAN
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

3.4.15
Date

MARK POLLINS
Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Of Counsel:
CATHLEEN TIERNEY
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
Telephone: (202) 564-4254
Facsimile: (202) 564-0086
E-mail: Tierney.Cate@epa.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR PLAINTIFF STATE OF MISSISSIPPI BY AND THROUGH THE MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY AND THE MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY:

Feb. 6, 2015
Date

Gretchen L. Zmitrovich
GRETCHEN L. ZMITROVICH
MS Bar No. 101470
Senior Attorney
Office of Pollution Control
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, Mississippi 39225
Telephone: (601) 961-5050
Facsimile: (601) 961-5674
E-mail: Gretchen_Zmitrovich@deq.state.ms.us

WE HEREBY CONSENT to the entry of this Consent Decree in *United States, et al. v. Cal-Maine Foods, Inc.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7(c):

FOR DEFENDANT CAL-MAINE FOODS, INC.:

3-2-15
Date

Wil Webb
Vice-President - Operations
3320 W. Woodow Wilson Ave.
Jackson, Mississippi 39209
Telephone: (601) 948-6813

APPROVED AS TO FORM:

2.27.15
Date

Leonard Dougal - State Bar No. 06031400
JACKSON WALKER L. L.P.
100 Congress, Suite 1100
Austin, Texas 78701
Telephone: (512) 236 2233
Facsimile: (512) 391-2112
E-mail: ldougal@jw.com